UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CONSTANCE LORRAINE,

Plaintiff,

v.

NORMAN L. WALLIN, et. al.

Defendants.

Case No. 3:16-cv-00409-MMD-WGC

**ORDER**

## I. BACKGROUND

Plaintiff Constance Lorraine filed her application to proceed in forma pauperis (IFP) and pro se complaint, alleging, in essence, that she was wrongfully induced into a purchasing a vehicle that she advised she could not afford. She asserted various state and federal law claims.

She has filed various motions in this case, including a motion to amend. (*See* 3:16-cv-00409-MMD-WGC, ECF No. 13.) At a January 10, 2017 status conference, the court advised Plaintiff that pursuant to Local Rule 15-1 she had to attach the proposed amended complaint to her motion for leave to amend. (*See* Minutes of Jan. 10, 2017 status conference, 3:16-cv-00409-MMD-WGC, ECF No. 43 at 2.) Therefore, the court denied her motion to amend without prejudice, advising Plaintiff that she could re-file the motion along with a complete copy of the proposed amended complaint. (*Id.*)

On February 28, 2017, Plaintiff filed a new application to proceed IFP and pro se complaint which alleges many of the same allegations as are pending in the original complaint in this case, but adds Fiat of Reno as a defendant. (3:17-cv-00127-RCJ-WGC, ECF Nos. 1, 1-1.) The court has issued an order construing the newly filed complaint as the proposed amended complaint in this case, 3:16-cv-00409-MMD-WGC, and directed the Clerk to file it as such in this case. (*See* ECF No. 48)

The court will now proceed with screening the amended complaint.

## II. SCREENING

### A. Standard

28 U.S.C. § 1915 provides: "the court shall dismiss the case at any time if the court determines that...the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). This provision applies to all actions filed in forma pauperis, whether or not the plaintiff is incarcerated. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and this court applies the same standard under Section 1915(e)(2)(B) when reviewing the adequacy of the complaint or amended complaint. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted). Review under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).

In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Allegations in pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and

Procedure § 1216, at 235-36 (3d ed. 2004)). At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. The Original Complaint**

The court screened Plaintiff's original complaint and allowed her to proceed with the following claims:

First, she stated a claim for elder abuse under Nevada Revised Statute 41.1395 against Norman Wallin and Kevin Sheppard based on allegations that she was over 65, Defendants wrongfully took her car in bad faith, and charged her more than advertised for the vehicle and less that what her vehicle was worth based on her age and vulnerabilities. (ECF No. 3 at 5.)

Second, she stated a Nevada common law fraud claim against Wallin and Sheppard based on allegations that they made false statements of material fact that they knew were false when they told her that her car's plates had been removed, the car had been detailed and moved to a used car lot and could not be returned, which she relied on in accepting the new vehicle. (ECF No. 3 at 6.)

Third, she a stated Nevada fraud in the inducement claim against Wallin and Sheppard based on the allegations that they used lies, trickery, deceit and false pretenses to force her into a position to purchase a new vehicle. (ECF No. 3 at 6.)

Fourth, she stated claims for deceptive trade practices under Nevada law against Wallin and Sheppard. (ECF No. 3 at 7.)

Fifth, she stated a Nevada common law claim for intentional infliction of emotional distress (IIED) against Wallin and Sheppard. (ECF No. 3 at 8.)

Sixth, she stated claims under the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et. seq*., and its implementing regulation, Regulation Z, which requires that creditors disclose certain information in consumer credit transactions and subjects a creditor who violates the act to civil liability (ECF No. 3 at 9-10), and the disclosures must be made clearly and conspicuously in writing (including the number, amount and due dates or period of payments scheduled to repay the total payments). Plaintiff alleged she was forced to read the disclosures in a dimly lit room, with small type, and the court determined she could proceed with her TILA claim on this basis. (*Id*. at 11.) The court also found Plaintiff could proceed under TILA to the extent she alleged that they disclosed items under the amount financed (an alarm fee and vehicle protection plan) that should not have been included. (*Id*. at 11-12.) Next, the court found that construing the allegations liberally, Plaintiff could proceed under TILA on her allegations that Defendants failed to give her the required disclosures prior to consummation of the transaction. (*Id*. at 12.)

Seventh, she stated a federal law claim for violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § § 1601-1693r, against Wallin, Sheppard and Santander Consumer USA Inc., dba Chrysler Capital, based on allegations that she did not receive an adverse action letter when taking adverse action against her. (*Id*. at 12-14.)

Finally, she stated a Nevada common law conversion claim against Sheppard based on allegations that he advised her that she could not get her car back, and if she did not make payments on the Fiat it would be repossessed. (*Id*. at 14.)

No claims were asserted against Aaron Waite or Sergio Marchionne. While she was given leave to amend to assert claims against them (ECF No. 3 at 15 n. 5), she did not include these individuals as defendants in her amended complaint; therefore, no claims are proceeding against them.

**C. Amended Complaint**

In the amended complaint, Plaintiff sues Norman Wallin (Fiat of Reno salesman), Kevin Sheppard (Fiat of Reno sales manager), Santander Consumer, USA Inc. for Chrysler Capital, Inc. (Santander), and the Fiat of Reno Dealership. (ECF No. 48 at 1-2.)

As she did in the original complaint, Plaintiff alleges that on July 18, 2015, she drove from Fernley to be with her son while he looked at buying a new Fiat. (ECF No. 48 at 3.) Salesman Wallin asked if she was interested in buying a car too, and she responded she was on a fixed income of $736 a month, could only afford $200 a month, and had bad credit. (*Id.*) Wallin said that was not a problem. (*Id.*) Wallin asked for her keys to check out a possible trade-in, and she gave him her keys. (*Id.*) After several hours, she asked for her keys back and was told they had removed the plates of her car, detailed it, and moved it to a lot. (*Id.*) She was told that she could drive a new Fiat home and if she did not want to buy it she could bring it back but needed to sign papers. (*Id.*) She had not looked at or driven a Fiat, and was taken to a dimly lit room and told to sign papers. (*Id.*) They gave her keys, told her how to drive the car and left her alone. (*Id.*) They told her that her son had left, but in reality he was in the back of the dealership putting gas in the car he had purchased. (*Id.*)

Wallin asked her to wait two days before she brought the Fiat back. (*Id.* at 4.) She called two days later and told Sheppard she was bringing the Fiat back and wanted her car back. (*Id.*) Sheppard told her they had sold her car, and Plaintiff told him: "When I get my car back you get yours." (*Id.*) Wallin had quit his job and was not available. (*Id.*) She asked Sheppard to see the contract earlier, and he advised her it was not made out yet and that she "wouldn't understand it anyway." (*Id.*)

There have been three subsequent attempts to repossess the Fiat. (*Id.* at 6.) The person involved in the third attempt said he was from Chrysler and threatened her, and it took her a long time to get over the stress of this incident. (*Id.*)

At the time of the incident, she was 85 years old and severely handicapped. (*Id.* at 5.)

She asserts claims for: (1) theft of her supposed trade-in; (2) unfair and deceptive business practices; (3) violation of the Federal Truth in Lending Act; and (4) fraudulent inducement to enter into a contract; (5) intentional and actual fraud; (6) financial elder abuse; (7) violation of the Equal Credit Opportunity Act; and (8) IIED. (*Id.* at 4-6.) The court will now address each of these claims in turn.

**1. Theft of Trade-In**

Plaintiff states a colorable claim for conversion under Nevada law against Sheppard, Wallin and Fiat of Reno in alleging that Wallin told her they were going to check out her car for a potential trade in, but then it was detailed and taken to another lot; and, that she was advised by Fiat employee Sheppard that she could not get her car back and that if she did not make payments on the Fiat it would be repossessed. *See Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048, 116 Nev. 598, 606 (Nev. 2000) (citation omitted) ("Conversion is 'a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights.'").

**2. Unfair and Deceptive Business Practices**

Nevada law prohibits deceptive trade practices when a person:

> [I]n the course of his or her business or occupation...:
> ...
> 11. Advertises goods or services as being available free of charge with intent to require payment of undisclosed costs as a condition of receiving the goods or services.
> ...
> 13. Makes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions.
> ...
> 15. Knowingly makes any other false representation in a transaction.
> ...

Nevada Revised Statute (NRS) 598.0915. In addition, a person engages in a deceptive trade practice in Nevada when the person:

> (9) Fails, in a consumer transaction that is rescinded, cancelled or otherwise terminated in accordance with the terms of an agreement, advertisement, representation or provision of law, to promptly restore to a person entitled to it a deposit, down payment or other payment or, in the case of property traded in but not available, the agreed value of the property ....
> (12) Knowingly takes advantage of another person's inability reasonably to protect his or her own rights or interests in a consumer transaction when such an inability is due to illiteracy, or to a mental or physical infirmity or another similar condition which manifests itself as an incapability to understand the language or terms of any agreement.

NRS 598.021(9), (12).

Additional deceptive trade practices include: the failure to disclose a material fact in connection with the sale or lease of goods or services, NRS 598.0923(2); violation of a state or federal state regulating the sale of goods or services, NRS 598.0923(3); the use of coercion, duress or intimidation in a transaction, NRS 598.0923(4).

An elderly person (defined as sixty or older under NRS 598.0933), may bring a civil action for injury resulting from a deceptive trade practice, and may recover actual damages, punitive damages, and reasonable attorney's fees. NRS 598.0977.

Plaintiff has stated colorable claims for deceptive trade practices under Nevada law against Wallin, Sheppard, and Fiat of Reno based on her allegations that she advised them of her limited income and bad credit, and they told her they just wanted to look at her car for a possible trade-in and then when she asked for her keys back she was told it had been put on a lot and she could take a Fiat home and come back in two days. When she called back in two days' time, she was told that they sold her vehicle.

**3. Violation of the Federal Truth in Lending Act (TILA)**

TILA, 15 U.S.C. § 1601, *et. seq.*, was enacted on May 29, 1968 as part of the Consumer Credit Protection Act. Pub. L. 90-321. Its implementing regulation is referred to as Regulation Z, 12 C.F.R. 226.1, *et. seq.*, and TILA became effective July 1, 1969. TILA requires that creditors disclose certain information in consumer credit transactions. 15 U.S.C. § 1638. Its purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit ...." 15 U.S.C. § 1601(a).

TILA requires that borrowers receive written disclosures regarding important terms of credit before they are legally bound to pay the loan, including the APR, finance charge, amount financed, total payments, number of payments, monthly payment, and due dates of payments. 15 U.S.C. 1638(B). A creditor who fails to comply with the requirements is civilly liable for actual and statutory damages. 15 U.S.C. § 1640(a).

Regulation Z requires that the disclosures be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17. The creditor must disclose "[t]he

number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(2)(B)(6); 12 C.F.R. § 226.18(g). The staff commentary to Regulation Z states:

> This standard requires that the disclosures be in a reasonably understandable form. For example, while the regulation requires no mathematical progression or format, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other. In addition, although no minimum type size is mandated (except for the interest rate and payment summary for mortgage transactions required by § 228.18(s)), the disclosures must be legible, whether typewritten, handwritten, or printed by computer.

12 C.F.R. Pt. 226, Supp. I, Subpt. C, § 226.17(a)(1).

In screening the original complaint, the court construed Plaintiff's allegations that she was forced to read the TILA disclosures in a dimly lit room, with small type, as stating a colorable TILA claim. While Plaintiff includes the allegation that she was led to a dimly lit room to sign papers, she does not include the allegations, which appeared in the original complaint, that the required TILA disclosures were not in a reasonably understandable form.

In screening the original complaint, the court also construed Plaintiff's allegations that items were disclosed under the amount financed that should not have been included as stating a claim under TILA. Plaintiff does not include those allegations in the amended complaint.

Finally, the court found that the original complaint stated a TILA claim based on the alleged failure to give her the required TILA disclosures prior to consummation of the transaction. Plaintiff, however, does not include this allegation in the amended complaint.

In sum, the amended complaint fails to state a claim under TILA. Plaintiff is granted leave to amend to state such a claim if she desires.

**4. Fraudulent Inducement to Enter into a Contract**

"A party to a contract may seek rescission of that contract based on fraud in the inducement." *Awada v. Shuffle Master, Inc.*, 173 P.3d 707, 713, 123 Nev. 613, 622 (Nev. 2007). To establish fraud in the inducement, a plaintiff must establish that: (1) the defendant made a false representation, (2) that it knew or believed to be false or had an insufficient basis on which to make the representation, (3) the defendant intended to convince the plaintiff to enter into the

contract, (4) the plaintiff justifiably relied on the representation, and (5) damages resulted. *See J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018, 120 Nev. 277, 290-91 (2004).

Plaintiff has sufficiently asserted a colorable fraud in the inducement claim against Wallin, Sheppard and Fiat of Reno.

**5. Intentional/Actual Fraud**

The elements of a common law fraud claim in Nevada are: (1) the defendant made a false representation; (2) the defendant knew or believed the representation was false or had an insufficient basis for making the representation; (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) damage to the plaintiff resulted from such reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592, 108 Nev. 111 (Nev. 1992) (citation omitted).

Plaintiff states a colorable fraud claim against Wallin, Sheppard and Fiat of Reno. She claims that Wallin told her they were just going to check out her possible trade in, but later, at closing time, said it was detailed and moved to a lot and that she could drive a Fiat home and bring it back if she did not want to buy it, and then led her to a dimly lit room and told her to sign the papers. When she asked to see the contract, Sheppard told her it was not made out yet and that she would not understand it anyway. At the same time, they told her that her son had left, which she avers turned out not to be true. Wallin asked her to wait two days before bringing the Fiat back, and when she called and spoke with Sheppard stating that she wanted to bring the car back and get her car, he told her that her car had been sold.

**6. Financial Elder Abuse**

NRS § 41.1395(1) states:

> [I]f an older person or a vulnerable person suffers a personal injury or death that is caused by abuse or neglect or suffers a loss of money or property caused by exploitation, the person who caused the injury, death or loss is liable to the older person or vulnerable person for two times the actual damages incurred by the older person or vulnerable person.

Here, the alleged abuse would be loss of property by exploitation. The statute defines "exploitation" as:

> (b) any act taken by a person who has the trust and confidence of an older person or a vulnerable person or any use of the power of attorney or guardianship of an older person or a vulnerable person to:
> (1) Obtain control, through deception, intimidation or undue influence, over the money, assets or property of the older person or vulnerable person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of that person's money, assets or property; or
> (2) Convert money, assets or property of the older person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of that person's money, assets or property.

NRS 41.1395(4)(b)(1)-(2).

Plaintiff states a colorable claim for elder abuse under Nevada law against Wallin, Sheppard, and Fiat of Reno. She alleges that Wallin, Sheppard and Fiat exploited her to gain her vehicle and then sought return of the Fiat.

**7. Violation of the Equal Credit Opportunity Act (ECOA)**

The ECOA is found in Title VII of the Consumer Credit Protection Act, 15 U.S.C. § § 1601-1693r. It prohibits discrimination by any creditor "against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... age." 15 U.S.C. § 1691(a). It applies to all "credit transactions." Bros v. First Leasing, 724 F.2d 789, 791 (9th Cir. 1984). A "creditor" under the ECOA is "any person who regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e). "Credit" is "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). A creditor does not discriminate by considering "the age of an elderly applicant when the age of such applicant is to be used by the creditor in the extension of credit in favor of such applicant[.]" 15 U.S.C. § 1691(b)(4).

The ECOA requires a creditor to notify an applicant within thirty days after receipt of the application of the action taken, and if adverse action is taken, the applicant is "entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(1), (2). The creditor may fulfill this obligation by:

> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the

> creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

15 U.S.C. § 1691(d)(2)(A)-(B).

An applicant may sue for a violation of the ECOA when a creditor takes adverse action (denial or revocation of credit, change in terms of credit arrangement, or refusal to grant credit in the amount or on the terms requested), without giving the required notice. 15 U.S.C. § 1691(d), § 1691e.

In the original complaint, Plaintiff alleged that she did not receive an adverse action letter (presumably when she was ultimately denied financing for the vehicle), and that based on her age she was given excessive finance charges as compared to others. The court construed these allegations as stating an ECOA claim against Wallin, Sheppard, and Santander. The amended complaint fails to include any of these allegations; therefore, it does not state a claim under the ECOA. Plaintiff is granted to leave to amend to attempt to assert such a claim.

**8. IIED**

A plaintiff asserting an IIED claim in Nevada must allege: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (Nev. 1981).

In the original complaint, Plaintiff alleged that the conduct of Sheppard and Wallin was extreme and outrageous, and as a result she suffered severe mental and emotional distress. In the amended complaint, she mentions suffering from distress as a result of the conduct of the repossession agent from Chrysler, but does not allege that Sheppard, Wallin and Fiat of Reno's conduct caused her distress.

As it stands, she does not state an IIED claim in the amended complaint against Sheppard, Wallin or Fiat of Reno. She does state a colorable claim against Santander. Plaintiff is granted leave to amend to attempt to assert an IIED claim against the Wallin, Sheppard and Fiat of Reno, keeping in mind the elements listed out above.

**III. CONCLUSION**

(1) Plaintiff is permitted to **PROCEED** with the following claims in the amended complaint: a Nevada conversion claim against Sheppard, Wallin and Fiat of Reno; a Nevada deceptive trade practices claim against Wallin, Sheppard and Fiat of Reno; a Nevada fraudulent inducement claim against Wallin, Sheppard, and Fiat of Reno; a Nevada fraud claim against Wallin, Sheppard and Fiat of Reno; a Nevada financial elder abuse claim against Wallin, Sheppard and Fiat of Reno; and, an IIED claim against Santander.

(2) Plaintiff is **GRANTED LEAVE TO AMEND** with respect to the following: the federal TILA claim; the federal ECOA claim; and, the Nevada IIED claim as to Wallin, Sheppard and Fiat of Reno.

(3) Plaintiff may file a second amended complaint within **THIRTY DAYS** of the date of this Order which cures the deficiencies with respect to the TILA, ECOA and IIED claims (as to Wallin, Sheppard and Fiat of Reno), as outlined in this Order. The pleading shall be titled as the "Second Amended Complaint," and shall be complete in and of itself without reference to any previous complaint. Any allegations, parties or requests for relief from prior pleadings that are not carried forward in the amended complaint will no longer be before the court. If Plaintiff fails to file an amended complaint within thirty days, the action will go forward only on the claims allowed to proceed in this Order. As it stands, the amended complaint is only proceeding on State law claims; however, in light of the granting of leave to amend, jurisdiction will be addressed when Plaintiff files a second amended complaint, or the time to do so has expired, whichever occurs first.

(4) The **Clerk** shall **ISSUE** a summons for defendant Fiat of Reno, and send Plaintiff a copy of the amended complaint and service of process form USM-285. Plaintiff has **TWENTY DAYS** to complete the USM-285 form and return it to the U.S. Marshal to complete service upon Fiat of Reno. Within **TWENTY DAYS** of receiving from the U.S. Marshal a copy of the USM-285 form showing whether service has been accomplished, Plaintiff should be directed to file a notice with the court indicating whether Fiat of Reno was served. If serve was not effectuated, and if Plaintiff wishes to have service attempted again, she must file a motion with

the court providing a more detailed name and/or address for service, or indicating that some other method of service should be attempted. Plaintiff is reminded that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within ninety days of the date of the filing of the amended complaint.

(5) The court has concurrently issued an order referring this action to the Pilot Pro Bono Program. *See* General Order 2014-01.

(6) Plaintiff's pending motions for summary judgment (ECF Nos. 20. 33) are **DENIED AS MOOT** in light of the filing of the amended complaint.

(7) Defendant Santander's pending second motion to remand (ECF No. 45) is **DENIED WITHOUT PREJUDICE**. A separate order has been issued addressing Plaintiff's most recent notice of removal, directing that it be filed as a separate action. (*See* ECF No. 47 at 2.) The new action is 3:17-cv-00131-MMD-WGC. Once service of the notice of removal on Santander is completed, Santander may re-file its motion to remand in that action.

(8) The notice of intent to dismiss Sergio Marchionne is **VACATED**, as Plaintiff did not name Mr. Marchionne as a defendant in the amended complaint.

(9) Mr. Wallin's Motion to Dismiss (ECF No. 7) is **DENIED AS MOOT** as it addressed the original complaint.

(10) Aaron Waite's motion to dismiss is likewise **DENIED AS MOOT** as Waite was not named as a defendant in the amended complaint.

(11) The deadlines from the Discovery Plan and Scheduling Order will be revised after the filing of the second amended complaint, or the expiration of time to do so, whichever occurs first.

**IT IS SO ORDERED.**

DATED: March 8, 2017.

William G. Cobb

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE